IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50111
Summary Calendar
_____


UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

DARRELL LENARD BATES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
September 21, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Darrell Lenard Bates was indicted on ten counts of tax fraud and aiding and abetting in violation of 18 U.S.C. §§ 287 and 2.  In accordance with a plea agreement, Bates pleaded guilty to a one-count information charging him with filing a tax

---

[*]Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the court has determined that this opinion should not be published.

1

return with false and fraudulent statements in violation of 26 U.S.C. § 7206. The district court departed upward and sentenced Bates to imprisonment for 36 months, one year of supervised release, and the special assessment. Upon Bates's timely appeal of his sentence, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 1993, a federal grand jury returned a one-count indictment charging Bates with Filing False, Fictitious or Fraudulent Claims in violation of 18 U.S.C. § 287. Then, on January 18, 1994, Bates, along with codefendants Soul Sabastian Dickey, Dorothy Jo Fields, Anthony Lee Garrett, Geary Don Tatum and Jacquelyn Denise Manning, was named in a Superseding Indictment, charging them with ten counts of tax fraud and aiding and abetting in violation of 18 U.S.C. §§ 287 and 2. The Superseding Indictment named Bates in all ten counts.

The facts underlying the Superseding Indictment involved a lengthy series of fraudulent claims made to the Internal Revenue Service requesting undeserved refunds for federal fuel taxes. Specifically, the government charged that, for tax years 1986 to 1989, Bates filed federal income tax returns claiming credit for federal tax on fuels totaling $73,295 and received payments from the IRS totaling $71,633. Bates, however, was not in business in that period, had little or no income, and was due no credits for fuel tax. For part of the time in which he filed the returns, he was incarcerated in the Dallas County jail and the Texas

2

Department of Corrections.

The indictment also charged that Bates instructed and assisted fellow inmates in filing their own fraudulent returns claiming fuel-tax credits. With Bates's assistance, inmates and codefendants Anthony Lee Garrett, Soul Sabastian Dickey, and Geary Don Tatum--whose return Bates was said to have actually prepared--filed fraudulent returns. Bates also helped his girlfriend, Dorothy Jo Fields, as well as Garrett's sister, Jacqueline Denise Manning, claim and receive fraudulent fuel-tax refunds. Finally, Bates allegedly prepared a fraudulent return in his brother's name, and later, when subsequently questioned about the return, falsely represented himself as his brother to authorities. Bates allegedly admitted to officers of the IRS Criminal Investigation Division both that he filed the fraudulent returns that bore his name and also that he assisted Fields in fraudulently obtaining her refund.

In total, Bates and his codefendants claimed $310,655 in refunds and received $245,119 in payments from the IRS. After discovering the scheme, the Government recovered only $21,001.

On October 18, 1994, after four of his codefendants had pled guilty to various charges, Bates pled guilty to a one-count Superseding Information, in accordance with a plea agreement. This Information, filed on October 13, 1994, charged him with Fraud and False Statements on an Individual Income Tax Return, in violation of 26 U.S.C. § 7206. The charges involved a tax return filed on January 7, 1989, in which Bates claimed a refund in the

3

amount of $23,595.13. The plea agreement provided that, in exchange for Bates's plea of guilty, the United States Attorney would dismiss the Superseding Indictment. The government also agreed that it would not prosecute Bates for further Title 18 or 26 offenses with regard to the facts that gave rise to the Superseding Indictment, and that, in particular, it would not pursue charges concerning a 1989 Form 1040 claiming a refund of $37,070. The government did, however, reserve its right to move for an upward departure from the guidelines upon sentencing.

In the Revised Presentence Investigation Report ("PSR"), which incorporated several objections raised by Bates, Bates was assigned a base offense level of six, in accordance with U.S.S.G. § 2T1.3 ("Fraud and False Statements Under Penalty of Perjury," in violation of 26 U.S.C. § 7206). The Probation Office suggested an upward adjustment of two levels pursuant to U.S.S.G. § 3B1.1 because Bates organized other fuel-tax refund claimants, thus playing an aggravating role in the offense. It also recommended an upward adjustment of two points pursuant to U.S.S.G. § 3G1.1 for obstructing the investigation, resulting in a total offense level of ten. Further, the Probation Office assigned no reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, because, even though Bates pled guilty, and admitted some fraudulent filings, he still denied his involvement in much related conduct. The Probation Office computed Bates's criminal history category as IV, to yield, when combined with a total offense level of 10, a Guidelines sentencing range of 15 to

4

21 months. Lastly, the PSR suggested that the court may consider an upward departure pursuant to U.S.S.G. § 5K2.0 based on the fact that the entire scope of Bates's conduct was not adequately addressed by the applicable offense guideline. Bates's objections that did not lead to direct changes in the Parole Department's recommendations were included in a lengthy addendum to the Report.

Prior to the sentencing hearing, the Government moved for an upward departure pursuant to section 5K2.0, for two reasons. First, the Government asserted that an upward departure was warranted because § 2T1.3(a)(2), applied by the Probation Office, did not provide an increase either for more than minimal planning or for the amount of fraud, as did section 2F1.1, the Guidelines section originally applied prior to Bates's objections. The Government also asserted that a departure was appropriate because Bates's sentence should be similar to that of his codefendants, in particular, that of Garrett.

At the sentencing hearing, the court heard testimony from Bates, as well as from two government witnesses. It also heard oral argument on Bates's objections to the PSR and the possible upward departure. In overruling Bates's objections to the PSR, the court specifically found that Bates had assisted Dickey, Garrett, Manning, Tatum and Fields in preparing fraudulent returns, and also that Bates had previously admitted to federal agents that he planned to use the fraudulent refunds as a "loan" from the government to purchase drugs. Further, the court held

that, even though the amount of the fraud that Bates was involved with was not relevant to his Guideline range (as there was no increase in his offense level based on the dollar amount of the relevant conduct under the governing provision), the court nonetheless was ruling on the specific factual objections because of their applicability to a possible upward departure, about which Bates had been reasonably forewarned. The court also ruled that for purposes of the possible upward departure, it would consider both the total fraudulent amount claimed in refunds ($310,655) and the amount actually issued by the IRS in refunds ($245,119). The court overruled objections to the aggravating-role adjustment, criminal history point assessment, and the denial of the reduction for acceptance of responsibility.

Accordingly, the court granted the Government's motion to upwardly depart on the ground that the Guidelines range does not adequately represent the total harm caused by Bates's conduct. The court added that one of the purposes of the Guidelines is to mete out similar sentences to persons who commit similar offenses in similar manners, and a Guidelines sentence for Bates would create an inequity between Bates and his codefendants. Citing U.S.S.G. § 5K2.0, "Grounds for Departure (Policy Statement)", the court increased Bates's total offense level by five levels, from 10 to 15, yielding a sentencing range of 30 to 37 months, and sentenced Bates to 36 months imprisonment. In its written reasons for the upward departure, the court stated that the applicable guideline did not adequately consider Bates's conduct

6

or the total harm that he caused, and that defendants who commit similar offenses should receive similar sentences.

Bates directly appeals his sentence on seven grounds. For the reasons stated below, we affirm the decision of the trial court in all respects.


## II.  DISCUSSION

### A.  Standard of Review

We review the sentencing court's interpretations of the Sentencing Guidelines, being conclusions of law, de novo. United States v. McCaskey, 9 F.2d 368, 372 (5th Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994).  The Guidelines applications must be based on factual findings supported by a preponderance of the evidence, and we review such factual findings under the clearly erroneous standard.  A factual finding is clearly erroneous if it is not plausible in light of the record taken as a whole. Anderson v. City of Bessemer City, 470 U.S. 564, 573-76 (1985).


Further, we review the district court's decision to depart from the Sentencing Guidelines under an abuse of discretion standard.  United States v. Chappell, 6 F.3d 1095, 1102 (5th Cir. 1993). A trial court departing from the Guidelines must articulate reasons for doing so and must have a reasonable basis. United States v. Chappell, 6 F.3d 1095, 1102 (5th Cir. 1993).


### B.  The district court did not err by departing upwardly from the guidelines because the

7

<u>departure was supported by an adequate legal ground</u>.

Bates argues that the district court erred when it upwardly departed to equalize his sentence with the sentences of his codefendants. Bates opposed the departure in the district court.

A sentencing court may depart when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b); <u>United States v. Lambert</u>, 984 F.2d 658, 661 (5th Cir. 1993) (en banc). We affirm an upward departure if the sentencing court offers acceptable reasons and the departure is reasonable.  <u>Id</u>. at 663. When the sentencing court offers both acceptable and unacceptable reasons, this court will affirm if we are convinced that, without the unacceptable reasons, the sentencing court would have imposed the same sentence.  <u>Id</u>. at 663 n.11.

In this case, the trial court appropriately found that the governing Guideline section did not sufficiently address the harm caused by Bates's criminal conduct.  Guideline Section 2T1.3 -- the section under which Bates was sentenced -- applies generally to crimes that are analogous to tax evasion.  U.S.S.G. § 2T1.3, comment (back'g).  For offenses committed to facilitate tax evasion, the offense level is determined by the magnitude of the tax loss, providing for offense levels ranging from six to 18. U.S.S.G. §§ 2T1.3(a)(1), 2T4.1.  For all crimes under the section that are not committed to facilitate tax evasion, the offense

level is six.  U.S.S.G. § 2T1.3(a)(2).  The guideline is silent about the magnitude of an offense that does not facilitate tax evasion.  Id.  Under this Guideline provision, Bates's base offense level was determined to be six.

In 1990, the Sentencing Commission amended the Guidelines to account for the magnitude of the loss.  U.S.S.G. §§ 2T1.3 (Historical Note), 2T1.1(a), (c)(4), 2T4.1 (1994).  The Commission's amendment strongly suggests that, prior to the amendment, the Guidelines had not adequately taken the magnitude of a fraudulent refund claim into consideration.  Faced with the omission of the Guidelines to take the magnitude of the fraud into consideration, the district court did not err in doing so by way of an upward departure.  See 18 U.S.C. § 3553(b); Lambert, 984 F.2d at 661.

If the current version of the Sentencing Guidelines had been applied in Bates's sentencing, the amount of loss for sentencing purposes would have been the total of all of the refunds that Bates fraudulently claimed and assisted others in fraudulently claiming.  U.S.S.G. §§ 2T1.1(c)(1), 2T1.1, comment. (n.2) (1994).  In this case, that amount exceeded $300,000, which would have called for a base offense level of 14.  U.S.S.G. § 2T41.(K) (1994).  That is an eight-level increase over the base offense level that was actually assigned to Bates's crime, which the district court increased by only five levels in the upward departure.

Thus, because Bates would have received a higher sentence

had he been sentenced pursuant to the version of the Guidelines released in 1990, when the Commission explicitly accounted for the magnitude of the refund fraud, the actual, less onerous upward adjustment is objectively reasonable.  See United States v. Harotunian, 920 F.2d 1040, 1046 (1st Cir. 1990).

Further, Bates argues that the upward departure must be vacated because it was based on an impermissible consideration -- the desire to equalize his sentence with that of his codefendants.  Although the district court did err by basing its upward departure in part on codefendant parity, United States v. Alvarez, 51 F.3d 36, 39 (5th Cir. 1995), we need not vacate the departure, because it was adequately supported by a legitimate, primary reason.  United States v. Davidson, 984 F.2d 651, 654 - 57 and n.9 (5th Cir. 1993).

Bates also argues that the upward departure is not supported by sufficiently specific reasons.  While we do require the sentencing court to state specific reasons for a departure, and generalized reasons are unsatisfactory because they make appellate review of the propriety of the reasons impossible, United States v. Mourning, 914 F.2d 699, 708 (5th Cir. 1990), we do not require the district court to expound extensively on the reasons.  Even  a "spartan" record can reveal adequate reasons for a departure.  United States v. Helmstetter, 56 F.3d 21, 23 (5th Cir. 1995).

In the instant case, as discussed above, the sentencing court heard argument on the question whether the 1988 Guidelines

10

adequately took the scope of Bates's offense into consideration, and determined that they did not -- a decision confirmed by the subsequent Guidelines amendment.  This reason is sufficiently specific to allow appellate review of its propriety.  We conclude that it is proper, and the upward departure is affirmed.

C.  The district court did not err by considering dismissed charges and uncharged misconduct as relevant conduct for purposes of the upward departure.

Bates argues that, for departure purposes, the district court improperly considered all of the conduct charged in the original indictment which was subsequently dismissed, including his alleged conduct in helping others to claim fraudulent refunds, rather than limiting itself to consideration of conduct underlying the count of conviction, which charged the filing of only one fraudulent return.  However, in upwardly departing, a sentencing court may rely on conduct charged in dismissed counts if that conduct is related to the conduct charged in the count of conviction.  United States v. Ashburn, 38 F.3d 803, 807 (5th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1969 (1995).

In this case, the conduct underlying the dismissed indictment is clearly related to the conduct underlying the charge to which Bates pled guilty.  The district court did not err in considering it, and we thus affirm its decision to do so.

D.  The district court properly used relevant conduct in adjusting Bates's base level upward based on his aggravating role in the offense.

11

Bates argues that the district court improperly increased his offense level for his aggravating role pursuant to U.S.S.G. § 3B1.1, by considering his organizing of the codefendants to file fraudulent returns.  He argues that the Guidelines were amended in 1990 for consideration of such an aggravating role, and therefore, the application of the amended Guidelines, violates the Ex Post Facto Clause, since his offense conduct occurred prior to the effective date of the amendment.

We apply retroactively Guideline amendments that clarify, rather than substantively amend.  <u>United States v. Maseratti</u>, 1 F.3d 330, 339 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1096, 1552, 115 S. Ct. 282 (1994).  Section 3B1.1 of the 1988 Guidelines Manual, captioned "Aggravating Role," provided for a two-level increase based on the defendant's role in the offense if he was an organizer of others.  Effective November 1990, the Sentencing Commission added a commentary stating that a defendant's role in an offense is to be determined on the basis of all conduct that comes within the scope of § 1B1.3, "Relevant Conduct."  U.S.S.G. App. C. ¶ 345.  Although Bates argues that his organization of others should not be considered because relevant conduct was not part of the determination of his role in the offense under the 1988 Guidelines, the Guidelines explicitly provide that the amendment to § 3B1.1 at issue is a clarifying amendment.  U.S.S.G. App. C. ¶  345; <u>United States v. Mir</u>, 919 F.2d 940, 945 (5th Cir. 1990).

Accordingly, the district court did not err in applying the

12

1990 Guideline commentary retroactively by considering relevant conduct.  No ex post facto problem arose.  On this issue, again, the district court is affirmed.


### E.  The district court did not err by its "double counting" of relevant conduct.

Bates argues that the district court impermissibly "double counted" his relevant conduct by considering it as a basis for increasing his offense level by two points and denying him a decrease for acceptance of responsibility, while at the same time using the same relevant conduct as a basis for departing upward from the Guidelines.  Bates, however, did not raise this issue in the district court.  Although he points to various places in the record where he objected to the use of relevant conduct, he can point to no place in the record where the issue of double counting was actually raised before the district court.  Thus we must consider the issue to be forfeited.

We exercise our discretion to correct forfeited errors pursuant to Federal Rule of Criminal Procedure 52 only in the most "exceptional" cases.  United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (citing United States v. Olano, 113 S. Ct. 1770, 1776-79 (1993)), cert. denied, 115 S. Ct. 1266 (1995).  In these circumstances, we follow the plain error standard, requiring that the error be both "plain" and "affect substantial rights," and, assuming that these requirements are met, we do not correct forfeited errors unless they "seriously affects the fairness, integrity, or public reputation of judicial

13

proceedings." Id. at 160. Accordingly, following direction from the Supreme Court, we have set out a three-part test for determining when a forfeited error shall be corrected: when the appellant shows that (1) there is an error, (2) that is "plain" and (3) that affects his "substantial rights." Id.

First, because Bates has not demonstrated either that the double counting, if an error, is "plain," or that it affects his "substantial rights," as will be discussed below, we need not decide whether the double counting he describes constitutes an error.

Second, Bates has not shown that, if an error, the trial court's "double counting" was an error that was "plain." We have held that "plain" in this context is synonymous with "clear or obvious," and, that, at a minimum, it contemplates "an error which was clear under current law at the time of trial." Calverley, 37 F.3d at 162-63. Bates does not, and cannot meet this requirement, as we have recently opined that the Sentencing Guidelines "do not prohibit all double counting." United States v. Box, 50 F.3d 345, 359 (5th Cir. 1995), petition for cert. filed, Nos. 95-5128 & 95-5164 (July 10 & 11, 1995). Double counting is prohibited only if the particular guidelines at issue forbid it, and the prohibition must be in express language. Id. Since no prohibition against double counting exists in the tax fraud guideline, § 2T1.3; the relevant conduct guideline, § 1B1.3; or the departures policy statement, §5K2.0, the district court's decision to "double count" Bates's relevant conduct, even

14

if error, was not "plain."

Finally, because Bates has not shown that the outcome of the sentencing proceeding would have been affected had this conduct not been double-counted, he has not shown that the error has affected his "substantial rights."  <u>Calverley</u>, 37 F.3d at 164-65.

For these reasons, the decision of the district court on this issue is affirmed.

### F.  The district court's factual findings as to Bates's assistance of codefendants were not clearly erroneous.

Bates argues that the district court erred in finding that he aided and abetted his codefendants in filing fraudulent returns.  We review factual findings made by the district court under a clearly erroneous standard, and the district court may consider any evidence that has "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3, comment.; <u>United States v. Manthei</u>, 913 F.2d 1130, 1138 (5th Cir. 1990).  A Presentence Investigation Report generally bears sufficient indicia of reliability to be considered by the trial court as evidence in making the factual determinations required by the Sentencing Guidelines.  <u>United States v. Gracia</u>, 983 F.2d 625, 629 (5th Cir. 1993); <u>United States v. Robins</u>, 978 F.2d 881, 889 (5th Cir. 1992).  A district court may rely on the PSR's construction of the evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts.  <u>Robins</u>, 978 F.2d at 889.

The Government bears the burden of establishing sentencing

15

facts by a preponderance of the evidence. United States v. Galvan, 949 F.2d 777, 784 (5th Cir. 1991).  A defendant who objects to consideration of information by the sentencing court bears the burden of proving that it is "materially untrue, inaccurate or unreliable."  United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991).

In this case, the district court's factual findings were more than sufficiently supported by reliable evidence, set forth both in the PSR and in testimony given at the sentencing hearing. In compiling the PSR, the Probation Office relied on reports of IRS investigators, at least one of whom actually testified at the sentencing hearing.  Even though Bates denied the factual allegations made by the investigators, and filed an affidavit disputing the report, the court was entitled to reject Bates's self-serving testimony in favor of that provided by the government.

Bates urges this court to follow a case in the Eighth Circuit, which has held that when a defendant objects to the PSR, the sentencing court must either make a finding that a disputed fact exists or state that it will not consider the disputed matter.  If the court chooses the former, it must rely on evidence outside the PSR to resolve the dispute.  United States v. Greene, 41 F.3d 383, 386 (8th Cir. 1994).  In this court, however, a sentencing court may simply choose to reject a defendant's self-serving denials.  United States v. Brown, 54 F.3d 234, 240 (5th Cir. 1995); United States v. Buenrostro, 868

16

F.2d 135, 138 (5th Cir. 1989), cert. denied, 494 U.S. 923 (1990).
We see no reason to deviate in this case from our well-established rule.

The district court, therefore, did not improperly overrule Bates's denials, and the factual findings are therefore not clearly erroneous.[1]

### G.  The district court did not err in the extent of its upward departure.

Bates argues that the extent of the upward departure -- that of five levels, adding an additional 15 months to his sentence -- was improper.  As discussed in Part B supra, we review the district court's decision to depart from the Sentencing Guidelines under an abuse of discretion standard.  United States v. Chappell, 6 F.3d 1095, 1102 (5th Cir. 1993).  In this case, the court's decision to depart upward five levels was reasonable in light of the nature, extent, and purpose of Bates's involvement in the criminal conduct underlying the conviction.

The district court did not err, and again we affirm.

### H.  The district court correctly followed the preponderance of evidence standard in making its factual determinations for sentencing purposes.

Bates argues that the district court erred by basing its

---

[1]  We note in passing that, even if this court were to follow the standard set out by the Eighth Circuit in Greene, the district court still did not err, as it was presented with evidence from two government witnesses on which it could have based its decision to overrule Bates's factual allegations.

17

factual findings on a preponderance of the evidence and not on clear and convincing evidence, and urges this court to reject the former standard in favor of the latter.  It is well settled in this circuit, however, that the standard of proof governing a district court's factual findings regarding sentencing is a preponderance of the evidence, and we see no reason to reconsider that well-established rule in this case.  <u>United States v. Mergerson</u>, 4 F.3d 337, 343 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 1310 (1994).

For this reason, the district court's actions in this regard are affirmed.


## III.  CONCLUSION

In sum, Bates has shown no error in the sentence itself or in the manner in which the district court determined it. For the reasons discussed above, we therefore

AFFIRM.

18